THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT CHRISTY, Defendant-Appellant.

First District (5th Division)   No. 62486

Opinion filed November 12, 1976.

James J. Doherty, Public Defender, of Chicago (William F. Krahl, Jr., and Gail Moreland, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant, following a jury trial, was convicted of robbery in violation of section 18—1 of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1.) He was sentenced to a term of 2 to 10 years. On appeal, he contends that remarks by a prosecution witness referring to criminal activity by him, other than that for which he was on trial constituted reversible error.

At trial the following pertinent facts were adduced.

*For the State*

*Dennis Clegg—Chicago Police Officer*

On June 18, 1973, at about 1:30 a.m. he and his partner, Officer McFadden, responded to a call from a fire station at Racine and Wilson where they found Wilma Weston sobbing, crying, screaming and excited. She was extremely nervous and her clothes were in disarray. The whole right side of her body was covered with dirt. They made an investigation and took her statement. The fire station is across the street from Andy's Lounge. The robbery took place at the alley right at the end of the firehouse where there are six lights.

*Wilma Weston*

She is the complainant. On June 17, 1973, about midnight, she sat at the bar in Andy's Lounge drinking beer and talking to a girl friend. After about one hour, she spoke to defendant whom she knew as "Harold" and had known for two or three years. After 15 or 20 minutes she announced she was going home. As she got up to leave, defendant offered to walk her home. She refused his offer and left. He got up and followed her west on Wilson Avenue. As she crossed Racine, he grabbed her right shoulder. She looked around and saw it was defendant. Defendant said, "Wilma, I have been after you a long time. I'm going to get you." He was standing in front of her. He hit her in the jaw, knocked her down on her right side and dragged her. He grabbed her watch and purse and ran. She screamed and a fireman came to help. She had a $50 check, $20 cash, some change in a

change purse, house keys together with her medical, social security cards and some other papers in the purse. She told the police "Harold" did it and that he was wearing dark pants and a striped shirt.

*Robert Lee King*

He is the manager of Andy's Lounge. He corroborated the fact that complainant, whom he has known for six years, was in the tavern on the evening in question. At about 1:15 a.m. she said goodbye and started toward the door where defendant was standing. She opened the door and walked out. Defendant followed her.

Although he did not know defendant's name, he had seen him many times over the last three or four years.

On cross-examination the following colloquy concerning defendant occurred:

> "Q. Did you ever have a conversation with him?
>
> A. Yes, sir, I had a short conversation one time. I was about to bust him in the head.
>
> Q. So you didn't like him, did you?
>
> A. I didn't have anything against the man. The guy was trying to jackroll a guy in my place."

Defendant's objection to King's last answer was sustained. After argument in chambers the court denied defendant's motion for a mistrial on the basis that defense counsel had invited the witness's "rambling" remarks. When court resumed, the jury was instructed to disregard the witness's last response.

King went on to state that defendant left the tavern about one-half minute after complainant. He watched through the front window and saw that they both walked west on Wilson Avenue.

He never saw complainant talk to defendant, however, on redirect examination he testified that she talked to a man at the shuffleboard game, whom he could not "get a good look at." On re-cross-examination he said this man left the tavern after the conversation. Later on redirect examination he admitted he did not know if the man returned later.

*John Murray—Chicago Police Department Robbery Investigator*

He investigated Wilma Weston's complaint. He arranged to meet with her on June 22, 1973, and look for defendant. At the second tavern at which they stopped, she identified defendant as the man who accosted her and took her purse. He arrested defendant.

OPINION

■■ Defendant's sole contention on appeal is that the volunteered remarks of King that defendant had attempted to "jackroll a guy," constituted reversible error. He argues that this reference by a prosecuting witness to criminal activity, other than that for which he was

on trial, irreparably prejudiced the jury despite the admonitions by the court to disregard the remark. This is especially true, he claims, where as here, the conduct mentioned constitutes the same offense as that for which he is on trial.

Although it is error to admit evidence which suggests prior criminal activity by defendant (*People v. Colston* (1967), 81 Ill. App. 2d 75, 225 N.E.2d 801), where the remarks are inadvertent, isolated, and nonresponsive, quick action by the court in striking the testimony and in giving the jury the proper cautionary instructions, relieves the remarks of any substantial prejudicial effect. *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626; *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683.

■■ We find this to be the situation here. King's comment that defendant had previously tried to "jackroll a guy" was clearly improper and prejudicial. Nonetheless, it appears it was an unintentional and isolated remark. The trial court acted promptly in sustaining defense counsel's objection and motion to strike and the jury was cautioned to disregard the remark. The motion for a mistrial was, therefore, properly denied.

Defendant relies principally upon *People v. Williams* (1966), 72 Ill. App. 2d 96, 218 N.E.2d 771. There, defense counsel during cross-examination elicited testimony from a detective associating defendant to another burglary accomplished in the same manner as that for which he was on trial. Defendant's objection to the testimony was sustained and the jury was cautioned to disregard the remark; however, his motion for a mistrial was denied. The appellate court reversed and remanded.

While there is a similarity between *Williams* and this case, defendant in *Williams* asserted two other grounds as error including the exhibition to the jury of prison photographs of himself bearing the legend "Jackson State Prison." In reversing defendant's conviction, the *Williams* court based its decision on all three alleged errors. We think that the prejudice resulting from the combination of these three errors was substantially greater than that created by the isolated remark in the instant case.

Moreover, even if we thought defendant's contention had merit, we would still affirm his conviction because the error was harmless beyond a reasonable doubt insofar as the jury's determination of guilt was concerned. (*People v. Henenberg* (1976), 37 Ill. App. 3d 464, 346 N.E.2d 11.) Here, the evidence shows that shortly after defendant offered to walk complainant home, he followed her out of the bar. She was attacked less than a block away. Her identification of defendant as the man who robbed her was positive, being based not only on what she saw, but also on what she heard (defendant having addressed her by name). In addition, the fact that she knew defendant two to three years prior to this

incident further assures the accuracy of her testimony. The evidence of guilt is substantial. Even if the reference to an extraindictment offense was erroneous, it did not affect the outcome of this case. The verdict would have been the same even if the remark had not been made.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and BARRETT, JJ., concur.