THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY YOUNG, Defendant-Appellant.

First District (5th Division)   No. 81—2526

Opinion filed July 29, 1983.

986

James J. Doherty, Public Defender, of Chicago (Gerald T. Winiecki, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Edward Barron, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged with armed violence, unlawful use of weapons, and the murder of Michael Jackson. Following a bench trial, the trial court entered a finding of guilty as to armed violence and unlawful use of weapons and continued the case for sentencing. On the next date the court entered a finding of guilty of murder and imposed sentence of 10 years only for armed violence. Thereafter, pursuant to a supervisory order of the Illinois Supreme Court, the trial court entered judgment on the murder conviction, imposed a sentence of 20 years thereon, and vacated the armed violence conviction. Defendant appeals.

The issues presented are whether: (1) the finding of guilty entered on April 15, 1981, constituted an acquittal of the charge of murder; (2) defendant's right against double jeopardy was violated; and (3) the State failed to prove guilt beyond a reasonable doubt.

Michael Jennings, witness for the State, testified that just prior to the shooting he was on his front porch with Michael Jackson and several other persons. A car drove up and Edward Clerk and defendant got out. Clerk walked up to Jackson and said, "Hey, man, I heard you been looking for me," then slapped Jackson with the .25-caliber handgun he was holding. As Jackson stepped back, Clerk fired the gun at him. Jackson then pulled out a .38-caliber handgun and fired at Clerk. As Clerk fell to the ground, Jackson began running. Until the shots were exchanged, defendant stood 12 to 14 feet from Clerk and 10 to 12 feet from Jackson, while holding a sawed-off shotgun. After Jackson shot Clerk, defendant fired the shotgun in the general direction of Jackson, then picked up the .25-caliber handgun and fired it toward Jackson, who by then was running away from where defendant stood.

The evidence showed that Clerk died from a gunshot wound in the head inflicted by a .38-caliber handgun. Jackson's body was found approximately one block from the scene of the shootings. He died as a result of a bullet from a .25-caliber gun entering his chest and traveling to his heart.

In a written statement made at the police station after the shooting and read in court defendant stated that Jackson had first tried to hit Clerk, that Jackson first pulled a gun and shot Clerk, and that when defendant picked up Clerk's gun Jackson shot at him and only then did defendant fire at Jackson.

A defense witness testified to substantially the same chain of occurrences as the State's witness. He said that Clerk approached Jackson, hit him in the face, and then shot him. Jackson then shot Clerk.

On April 15, 1981, after closing arguments, the court stated that "under the evidence and facts as elicited here, while the defendant did not fire any fatal shot the defendant has been proven to be legally accountable for the actions of Edward Clerk. Were Clerk here and alive Clerk would definitely be guilty of murder." The court then entered a finding of guilty as to armed violence and unlawful use of weapons, ordered a presentence investigation, and continued the case to May 20, 1981, for sentencing.

On May 20 the court stated:

> "There was a finding of guilty of Armed Violence and Unlawful Use of Weapons.
>
> Since the finding, and since the completion of the trial, an Advanced Sheet Opinion has come down which causes me to think that, perhaps, improvidently I did not complete the record.
>
> The advance opinion in question is *People versus Donald Ellis* in 93 Illinois Appellate Third, a First District case.[1]
>
> So, just to complete the record and, in fact, correct any inadvertent omissions, the Court does enter a finding of guilty of murder without going to a judgment of conviction."

The court then conducted a sentencing hearing only as to armed violence and then stated "The cause of death testified to as to Jackson was the bullet fired by Clerk, so actually there is one death here that the Defendant is accountable for and that is the death of Jack-

---

[1]Defendant correctly states that *People v. Ellis* (1981), 93 Ill. App. 3d 79, 416 N.E.2d 1174, has not particular relevance. However, it is noted that *People v. Ellis* (1981), 93 Ill. App. 3d 981, 418 N.E.2d 88, dealt with a similar issue of accountability. Both were recent First District cases, decided respectively on February 3, 1981, and March 5, 1981.

son." After finding that the offense of unlawful use of weapons was included and merged in the offense of armed violence, defendant was then sentenced only as to armed violence to a 10-year term.

On September 24, 1981, the Illinois Supreme Court entered a supervisory order which vacated the May 20, 1981, sentence and directed the trial judge "to enter a judgment of conviction pursuant to his finding of guilty of the offense of murder, and to enter sentence thereon" and further "to reconsider the sentence entered on May 20, 1981, in light of People v. King (1977), 66 Ill. 2d 551." (*People ex rel. Daley v. Samuels*, No. 55464.) On October 14, 1981, the trial court pursuant to the order entered judgment and sentenced defendant to a term of 20 years for murder and vacated the conviction and sentence of May 20, 1981, imposed for armed violence. Defendant appeals.

OPINION

Defendant first contends that the court's April 15, 1981, finding of guilty of armed violence and unlawful use of weapons operated as an acquittal of the charge of murder and, therefore, the conviction for murder violated his constitutional right against double jeopardy. The State responds that on April 15, 1981, the court found defendant guilty of murder and on May 20, 1981, merely clarified this finding prior to final judgment.

■ The principle of double jeopardy prohibits subjecting an individual to trial and possible conviction more than once for an alleged offense. (*Green v. United States* (1957), 355 U.S. 184, 187, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223; see *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260; Ill. Rev. Stat. 1981, ch. 38, par. 3—4.) The constitutional prohibition protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072; *People v. Gray* (1977), 69 Ill. 2d 44, 50-51, 370 N.E.2d 797, 799, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887.) We are here concerned with the first of these prohibitions.

Defendant bases his double jeopardy argument on the principle that a conviction on one of several counts in an information or indictment without reference to the other counts is an acquittal as to all other counts. (*People v. Bybee* (1956), 9 Ill. 2d 214, 137 N.E.2d 251; *People v. Smithka* (1934), 356 Ill. 624, 191 N.E. 211; *People v. Weil* (1909), 243 Ill. 208, 90 N.E. 731; see also *People v. Gray*.) Central to defendant's argument is his conclusion that the entry on April 15 in

the written memorandum of orders *finding* defendant guilty of armed violence and unlawful use of weapons operated as a conviction and, without reference to the murder charge, implicitly operated as an acquittal of murder. We disagree with defendant's premise and with his conclusion.

■■ Defendant construes the findings of the court entered on April 15 to operate as convictions and, implicitly, as an acquittal. "Acquittal" means a verdict or finding of not guilty of an offense, rendered by a legally constituted jury or by a court without a jury. (Ill. Rev. Stat. 1981, ch. 38, par. 2—1.) "Conviction" means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court without a jury. (Ill. Rev. Stat. 1981, ch. 38, pars. 2—5, 1005—1—5.) "Judgment" means an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court. (Ill. Rev. Stat. 1981, ch. 38, pars. 102—14, 1005—1—12.) The final judgment in a criminal case is the imposition of sentence. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) The pronouncement of the sentence is the act which embodies the judgment of the court. (*People v. Allen* (1978), 71 Ill. 2d 378, 375 N.E.2d 1283.) The sentence is a necessary part of a complete judgment of guilt. (*People v. Vaughn* (1981), 92 Ill. App. 3d 913, 416 N.E.2d 681.) In the absence of a sentence a judgment of conviction is not final. *In re J.N.* (1982), 91 Ill. 2d 122, 435 N.E.2d 473; *People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507; *People v. Surges* (1981), 101 Ill. App. 3d 962, 428 N.E.2d 1012.

■■■ The rules that specify when jeopardy attaches and that prohibit retrial of an acquitted defendant "should not be applied mechanically when the interests they protect are not endangered and when their mechanical application would frustrate society's interest in enforcing its criminal laws. *Illinois v. Somerville* (1973), 410 U.S. 458, 463, 35 L. Ed. 2d 425, 430, 93 S. Ct. 1066, 1070." (*People v. Deems* (1980), 81 Ill. 2d 384, 388, 410 N.E.2d 8, 10, *cert. denied* (1981), 450 U.S. 925, 67 L. Ed. 2d 355, 101 S. Ct. 1378.) In *Deems* the court affirmed the appellate court judgment reversing a dismissal of a subsequent indictment on double jeopardy grounds and vacated a prior "acquittal" judgment stating that "the word 'acquittal' 'has no talismanic quality for purposes of the Double Jeopardy Clause' (*Serfass v. United States* (1975), 420 U.S. 377, 392, 43 L. Ed. 2d 265, 276, 95 S. Ct. 1055, 1064), and what constitutes an acquittal for purposes of the double jeopardy clause is not necessarily controlled by the form of the

judge's action (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1354), or what the judge calls it (*United States v. Jorn* (1971), 400 U.S. 470, 478 n.7, 27 L. Ed. 2d 543, 552 n.7, 91 S. Ct. 547, 554 n.7; *United States v. Scott* (1978), 437 U.S. 82, 96, 57 L. Ed. 2d 65, 77, 98 S. Ct. 2187, 2196)." 81 Ill. 2d 384, 388-89, 410 N.E.2d 8, 10.

▪ In *People v. Jones* (1979), 75 Ill. App. 3d 945, 393 N.E.2d 1372, *cert. denied* (1980), 449 U.S. 847, 66 L. Ed. 2d 56, 101 S. Ct. 132, defendant claimed that the trial court's dismissal of an original indictment in response to defendant's motion for acquittal constituted an acquittal barring reindictment under section 3—4(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 3—4(a)(1)). There the handwritten order dated July 13 stated that the defendant's motions were granted but on August 8 the trial court vacated the prior order, denied acquittal and dismissed the indictment. The appellate court held that even if there had been no subsequent order vacating the order granting defendant's motion for acquittal, it would hold the defendant not acquitted, as the substantive effect of the order was a dismissal of the indictment; further, that the indictment in no way represented a " 'resolution of any of the factual elements of the offense charged' " (75 Ill. App. 3d 945, 947, 393 N.E.2d 1372, 1374) and was therefore not tantamount to an acquittal. The court noted that the United States Supreme Court in *United States v. Scott* (1978), 437 U.S. 82, 97, 57 L. Ed. 2d 65, 78, 98 S. Ct. 2187, 2196-97, quoting from *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355, stated: " 'a defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." ' " (75 Ill. App. 3d 945, 947, 393 N.E.2d 1372, 1374.) The trial judge's characterization of his own action cannot control the classification of the action. *United States v. Scott* (1978), 437 U.S. 82, 96, 57 L. Ed. 2d 65, 77, 98 S. Ct. 2187, 2196.

▪ An examination of the trial court's findings on April 15 in the instant case, even if limited *arguendo* to the written memorandum of guilty as to armed violence and unlawful use of weapons, did not constitute a judgment of conviction of those charges in the absence of a sentence being imposed. Neither did the court then make a finding of not guilty of murder, either in its oral or written findings. On the contrary, although no written finding as to murder was entered in the written memorandum of orders, the court did then expressly state on the record that defendant was proven legally accountable for the

action of Clerk who, if alive, would definitely be guilty of murder. This statement can in no way be considered a ruling which represents a resolution in defendant's favor of some or all of the factual elements of the murder charge. To adopt defendant's reasoning we would in effect have to say that the inference of acquittal of murder arising from the silence of the written memorandum of orders was strong enough to overcome the express contrary finding stated by the trial judge on the murder charge. (See *People v. Bybee* (1956), 9 Ill. 2d 214, 224, 137 N.E.2d 251, 256.) This we cannot do. Furthermore, the principle of an implicit acquittal did not become operative on April 15 because no *convictions* had then been entered on the other charges in the absence of any sentence thereon. Without such convictions, there was no implicit or equivalent acquittal on the murder charge. Moreover, the April 15 record clearly contradicts any *implicit* or *equivalent* finding of an acquittal as to murder, but instead it expressly resolves the factual elements of accountability as to the offense against defendant rather than in his favor.

The May 20 proceeding which included the entry of a finding of guilty of murder was consistent with the April 15 finding and was not a second prosecution for the same offense after an acquittal. The concept of double jeopardy has application only in cases of subsequent prosecutions. (*People v. Gabler* (1969), 111 Ill. App. 2d 121, 249 N.E.2d 340, *cert. denied* (1970), 397 U.S. 971, 25 L. Ed. 2d 266, 90 S. Ct. 1087.) In the instant case the court on April 15, 1981, ordered a presentence investigation and continued the matter for sentencing on May 20. It is significant that this procedure did not provide the prosecution a "second crack" and there was nothing in the procedure (the postponement) that unfairly subjected the defendant to the embarrassment, expense and ordeal of a second trial. The burdens, if any, are more akin to those resulting from a judge's permissible request for post-trial briefing or argument following a bench trial rather than to the defense of a full-blown second trial, and to the extent that the court made supplemental findings—albeit *sua sponte*—on the record, it did so without violating the constraints of the double jeopardy clause. (See *United States v. DiFrancesco* (1980), 449 U.S. 117, 140-41, 66 L. Ed. 2d 328, 348, 101 S. Ct. 426, 439.) The proceedings on April 15 and May 20 actually constituted a continuing single process. (See *United States v. DiFrancesco* (1980), 449 U.S. 117, 141, 66 L. Ed. 2d 328, 348, 101 S. Ct. 426, 439, citing *Swisher v. Brady* (1978), 438 U.S. 204, 57 L. Ed. 2d 705, 98 S. Ct. 2699.) " 'The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.' [Citations.] What the

judge had done 'did not twice put [defendant] in jeopardy for the same offense.' " (*United States v. DiFrancesco* (1980), 449 U.S. 117, 135, 66 L. Ed. 2d 328, 344, 101 S. Ct. 426, 436.) Viewed with an eye to all the circumstances of the proceedings (see *People v. Ward* (1978), 72 Ill. 2d 379, 381 N.E.2d 256), we conclude that the defendant's conviction on the murder charge did not violate defendant's right against double jeopardy.

Defendant's reliance on *Green v. United States* (1957), 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, 223, is not well taken. The jury there received instructions on first and second degree murder. Following a verdict of guilty of second degree murder, the trial court entered judgment, dismissed the jury, and imposed sentence. Following a reversal and remand, defendant was convicted of first degree murder and sentenced to death. The verdict of guilty of second degree murder at the first trial was held to be an "implicit acquittal" on the charge of murder in the first degree and, therefore, defendant's second trial for first degree murder violated the double jeopardy clause. Unlike the instant case, a "conviction" in *Green* had resulted on the other (second degree) charge when sentence was imposed, thereby resulting in the implicit acquittal as to first degree murder.

■ Defendant also relies on cases holding that the granting of a motion to direct a verdict is an acquittal, the legal effect of which is to bar under double jeopardy principles its vacation or reversal. (*People v. Stout* (1982), 108 Ill. App. 3d 96, 438 N.E.2d 952; *In re L.R.* (1982), 106 Ill. App. 3d 244, 435 N.E.2d 908; *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115; *People v. Gallas* (1966), 77 Ill. App. 2d 132, 221 N.E.2d 782.) These cases are also distinguishable from the instant case and are not here applicable. A directed verdict of acquittal constitutes a final adjudication on the merits of those charges affected by the motion (*In re L.R.*) and the granting of a motion to direct a verdict is an acquittal sufficient even if a judgment of acquittal is not entered thereon. (*People v. Stout; People v. King* (1974), 17 Ill. App. 3d 1064, 309 N.E.2d 598.) This again is unlike a finding or verdict of guilty where the sentence is indispensable to its finality.

Defendant also contends that the State failed to prove defendant guilty of murder and armed violence beyond a reasonable doubt. In its findings of fact, the trial court determined that Clerk fired the shot which killed Jackson and, at the time such shot was fired, defendant was standing 10 to 12 feet from Jackson and was holding a sawed-off shotgun. Upon the evidence presented herein, defendant was found guilty of murder and armed violence on a theory of accountability.

However, the conviction for armed violence was vacated on October 14, 1981, and is therefore not further considered.

In order to establish defendant's legal accountability the State must prove beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) such participation must have taken place either before or during the commission of the offense; and (3) such participation must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Freeman* (1981), 101 Ill. App. 3d 1014, 428 N.E.2d 1073; *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284.) Although mere presence at the scene of an offense or mere acquiescence in another's actions is ordinarily insufficient to establish accountability, one may be held to aid and abet without physically participating in the overt act. (*People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150, *cert. denied* (1981), 450 U.S. 1032, 68 L. Ed. 2d 228, 101 S. Ct. 1745.) If the evidence shows that defendant was present at the scene of the offense without disapproving or opposing it, the trier of fact may consider this conduct along with other circumstances in determining whether defendant assented to the commission of the offense and thereby aided and abetted the actor. (*People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693, *cert. denied* (1968), 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257; *People v. Crutcher* (1979), 72 Ill. App. 3d 239, 390 N.E.2d 571.) Although accountability requires that the assistance of the person to be held accountable must occur prior to or during the commission of the crime, such assistance can be inferred from conduct which occurs after the event. (*People v. Gray; People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.) The State is deemed to have met its burden of proving defendant's specific intent to promote or facilitate the commission of the crime where it proves " 'beyond a reasonable doubt that defendant shared the criminal intent of the principal, or that there was a community of unlawful purpose.' " (*People v. Hill* (1977), 53 Ill. App. 3d 280, 284, 368 N.E.2d 714, 717; *People v. Ramirez.*) Proof of community or purpose need not be expressly stated but may be inferred from the circumstances surrounding the commission of the act. *People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480; *People v. Gray; People v. Hunter* (1979), 69 Ill. App. 3d 732, 387 N.E.2d 1018.

The evidence concerning the circumstances surrounding the fatal shooting supports the finding of defendant's accountability. The evidence is undisputed that defendant accompanied Clerk to the scene of the confrontation which led to Jackson's death. Although he did

not fire the fatal shot, defendant was armed with a sawed-off shotgun when he exited the automobile with Clerk and took a position not far from him. After Clerk was felled, defendant took Clerk's gun and fired a shot at the retreating Jackson, then fired his shotgun in the same direction. Contrary to defendant's contention, the State proved more than mere presence. It proved that defendant had the specific intent to promote or facilitate the commission of the offense and, either before or during the commission of the offense, acted in some way to aid another person in the planning or the commission of the offense. We conclude that the evidence is sufficient to establish accountability of the defendant for murder and shows no reasonable doubt of defendant's guilt.

Defendant's contention that the existence of contradictory testimony is sufficient to show that he was not found guilty beyond a reasonable doubt is without merit. A conflict in testimony does not in itself establish a reasonable doubt of guilt. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) It is the responsibility of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Garner* (1981), 102 Ill. App. 3d 755, 430 N.E.2d 320.) Where the evidence is merely conflicting a court of review will not substitute its judgment for that of the trier of fact unless it is shown to be manifestly erroneous. (*People v. Akis.*) We do not find that to be the case as presented here.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.