*In re* L. R., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* L. R., Respondent-Appellant.)

Third District  No. 81-451

Opinion filed May 12, 1982.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

On July 28, 1978, a delinquency petition was filed against the minor respondent, L. R., alleging that he had committed the offense of burglary. Subsequently, L. R. was placed on two years' supervision. A petition to revoke his supervision was filed on October 2, 1979, alleging that the minor had violated the terms of his supervision by committing a burglary. Thereafter, the juvenile court extended L. R.'s supervision for an additional year. A supplemental petition of delinquency was filed on October 1, 1980, alleging that L. R. had committed the offenses of burglary, battery and theft. L. R. admitted committing the burglary and theft offenses, and the battery charge was dismissed. Following a dispositional hearing on November 13, 1980, L. R. was placed on probation for a period of one year.

On July 1, 1981, a petition to revoke the minor's probation was filed which alleged that L. R. had committed: (1) the offense of burglary when, without authority, he knowingly entered an apartment building which was the residence of Douglas Stegall and John Calise with the intent to commit a theft therein (paragraph 4); (2) the offense of theft of property from Douglas Stegall (paragraph 5); and (3) the offense of theft of property belonging to John Calise (paragraph 6).

At the adjudicatory hearing held on the State's petition, John Calise appeared as a witness but could not remember his address or identify the property L. R. allegedly stole from him. Douglas Stegall identified the property belonging to him and testified that L. R. had not been given permission to enter his apartment or to take any of the stolen items. Following the testimony of police officers who arrested L. R. and recovered the stolen property, the State rested.

Counsel for the minor then moved for a directed verdict of acquittal on the basis that the State had failed to sustain its burden of proof as to either the burglary or the thefts. The trial court granted the minor's motion as to paragraphs 4 (burglary) and 6 (theft of Calise's property) of the petition upon a finding that there has been a "total failure to show ownership and possession." The motion for a directed verdict of acquittal as to paragraph 5 (theft of Stegall's property) was denied.

The minor rested without presenting any evidence. During closing arguments it became clear that the trial judge was confused regarding the

wording of the paragraphs in the petition to revoke L. R.'s probation. Apparently, the trial judge erroneously believed that only John Calise was named in the paragraph 4 burglary charge and intended only to direct a verdict of acquittal as to the burglary and theft charges relating to Calise. However, when the fact that Douglas Stegall was also named in the burglary paragraph was made known to the trial judge, he sustained his prior ruling on the minor's directed verdict motion under the erroneous belief that the State was required to prove that the burglarized apartment was the residence of both persons named in the petition.

Following a brief recess, the trial court announced that it had reconsidered its prior ruling granting the minor's motion for a directed verdict as to the paragraph 4 burglary charge:

> "I have had occasion to reconsider my ruling with respect to the motion of the Public Defender insofar as the Court's ruling for a directed verdict as to Paragraph 4 of the Petition. That ruling was based primarily upon the failure of Mr. Cilise [*sic*] to identify any of the items, his identification of the items shown to him was essentially no identification whatsoever.
>
> Based upon that, the Court granted the Defendant's—Respondent's motion for directed verdict.
>
> After considering the matter, I feel that I was incorrect. At best, the naming of John Cilise [*sic*] was surplusage, the charge does adequately inform the minor of the nature of the allegations contained therein, and therefore, I'm going to reverse myself, and vacate that prior order granting the motion for the directed verdict as to Paragraph 4.
>
> I don't like doing so, nor do I like admitting that I'm incorrect, but I think anyone should realize when he is wrong. In reconsidering the circumstances, I think I'm clearly wrong."

Counsel for the minor declined the court's offer to reopen his case or to continue the cause and argued that the court's initial ruling on the motion for a directed verdict had been correct. A renewed motion for a directed verdict as to paragraph 4 was denied.

The trial court then found that the State had proved by a preponderance of the evidence that the minor had violated the conditions of his probation by committing the offenses of burglary and misdemeanor theft in taking property belonging to Douglas Stegall. L. R.'s probation was revoked, a social investigation report was requested, and the minor's cause was continued for a dispositional hearing.

At the dispositional hearing, held on July 23, 1981, no evidence was presented, but the court considered a dispositional report which revealed L. R.'s extensive series of conflicts with the law. In addition, the report indicated that L. R.'s parents were unable, for other than financial rea-

sons, to care for, protect and discipline the minor. The trial judge then committed L. R. to the Department of Corrections, as had been recommended by the Probation Department.

On July 24, 1981, L. R. filed a notice of appeal. Thereafter, he apparently made an oral, nonspecific motion for a new trial which was denied on July 30, 1981.

The issue raised by the minor in this appeal is whether he was placed in double jeopardy when the trial court reconsidered its ruling on his motion for a directed verdict of acquittal and later found the evidence sufficient to support a finding that the minor had violated the terms of his probation. The State initially contends that the minor's failure to raise this issue, either during the proceedings below or in his oral, nonspecific posttrial motion, constitutes a waiver of the double jeopardy issue raised for the first time on appeal. It is true that the failure to direct the trial court's attention to the specific issue raised on appeal, and thus to deprive the trial court of an opportunity to review any alleged errors, waives such issues for purposes of appeal. (*People v. McFarland* (1981), 93 Ill. App. 3d 136, 416 N.E.2d 769.) Even issues of constitutional magnitude, including double-jeopardy issues, may be waived by failure to object. *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Scales* (1960), 18 Ill. 2d 283, 164 N.E.2d 76; *People v. Szudy* (1978), 56 Ill. App. 3d 494, 371 N.E.2d 1222.

■■ In the case at bar, the minor's oral, nonspecific motion for a new trial did not preserve the double jeopardy issue for purposes of review in this court. Furthermore, a review of the record indicates that the only reference to the issue of double jeopardy at the minor's adjudicatory hearing was made by L. R.'s counsel in response to a motion by the assistant state's attorney to *nolle pros* the theft charge relating to John Calise. When the trial court denied the State's motion, L. R.'s attorney stated, "Your Honor, I believe the issue of double jeopardy does arise." At no other time was the issue of double jeopardy raised below.

■■ A written motion for a new trial, which included the double jeopardy issue raised on appeal, and which was apparently prepared by L. R.'s counsel subsequent to the adjudicatory hearing, does not preserve the issue for purposes of appeal, since the written motion was never filed in the trial court. Its inclusion in the record on appeal is of no consequence.

■■ The minor asks that we entertain the double jeopardy issue raised on appeal under the plain error doctrine (73 Ill. 2d R. 615(a)). Because we feel that substantial justice requires that the minor not be placed in jeopardy twice for the same crime, we will consider the issue raised on appeal. *People v. Pendleton* (1979), 75 Ill. App. 3d 580, 394 N.E.2d 496; *People v. Gallas* (1966), 77 Ill. App. 2d 132, 221 N.E.2d 782.

■■■ Unquestionably, the allowance of the minor's motion for a directed

verdict of acquittal at the close of the State's case in chief constituted a final adjudication on the merits of those charges affected by the motion; that is, the burglary charge as to both victims and the theft charge as to John Calise. (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(k).) Although, as the minor concedes and we confirm, the trial court erred in directing the verdict of acquittal on the burglary charge (see *People v. Henry* (1966), 68 Ill. App. 2d 48, 214 N.E.2d 550), the legal effect of the directed verdicts was to bar, under double jeopardy principles, the vacation or reversal of those verdicts. U. S. Const., amends. V and XIV; Ill. Const. 1970, art. I, sec. 10.

The facts in the instant case are analogous to those in *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115. In *Hutchinson*, the defendant was charged with aggravated kidnapping. At the conclusion of the State's case in chief, the court granted the defendant's motion for a directed verdict of acquittal. The following day, the court reversed its ruling, which had been based on its erroneous belief that lack of consent was an element of the offense charged. Subsequently, the defendant was convicted. In reversing the defendant's conviction, the appellate court held that the motion for a directed verdict, having been granted, albeit erroneously, was decisive, and the trial court's later attempted rescission of its ruling was a nullity. *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115.

The situation in the case at bar is strikingly similar. The trial judge correctly directed a verdict of acquittal of the John Calise theft charge and incorrectly directed a verdict of acquittal of the entire burglary charge. The State's attempt to distinguish the *Hutchinson* case upon the basis that the directed verdict ruling made there was a mistake of law, whereas the ruling made in the instant case was a mistake of fact, is not persuasive. A review of the record indicates that the trial judge initially made his ruling upon a mistake of fact. That is, he incorrectly believed that the burglary charge referred only to John Calise. However, the trial judge compounded the error by a mistake of law when he stated that the burglary charge must be proved as to both victims named in the charge.

■■ In addition, the fact that the *Hutchinson* case involves an adult defendant while the present case concerns a juvenile does not affect its applicability, since double jeopardy principles clearly apply to juvenile delinquency proceedings (*Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260), and, in Illinois, to probation revocation proceedings (*People v. Grayson* (1974), 58 Ill. 2d 260, 319 N.E.2d 43, *cert. denied* (1975), 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 200).

■■ The State's reliance upon the recent Illinois Supreme Court opinion in *People v. Van Cleve* (1982), 89 Ill. 2d 298, 432 N.E.2d 837, in support of its argument that L. R. was never placed in double jeopardy because a trial

judge may reconsider his erroneous rulings at any time before final judgment, is misplaced. In *Van Cleve*, a motion for a directed verdict was denied. However, the trial judge entered a judgment of acquittal notwithstanding the guilty verdict reached by the jury. In upholding the entry of the judgment notwithstanding the verdict, our supreme court determined that the denial of a directed verdict motion is not a final ruling and may be reconsidered at any time prior to the entry of a final judgment. The *converse* is not true. The allowance of a motion for a directed verdict is a final, nonappealable judgment of acquittal.

■■ Because it is impossible to determine whether L. R.'s probation would have been revoked had he been found to have committed only the misdemeanor theft of the property of Douglas Stegall, we must vacate the orders of probation revocation and commitment to the Department of Corrections and remand this cause for a new adjudicatory hearing on the State's petition to revoke. In so doing, we note the State's contention that the cause should be remanded for a dispositional hearing only, since L. R.'s probation could have been revoked based solely upon the evidence that he committed a misdemeanor theft of the property of Douglas Stegall. Because the trial court was not required to revoke L. R.'s probation (Ill. Rev. Stat. 1979, ch. 37, par. 705—3(6)), we cannot, sitting as a court of review, make the determination that revocation was the inevitable result of the State's petition to revoke. Thus, a new adjudicatory hearing is mandated.

For the foregoing reasons, we vacate the orders of probation revocation and commitment to the Department of Corrections entered by the circuit court of Will County and remand this cause for a new hearing on the State's petition to revoke L. R.'s probation.

Orders vacated, cause remanded.

ALLOY and HEIPLE, JJ., concur.