THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY STRONG *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 82—1181, 82—1182 cons.

Opinion filed December 17, 1984.

Chester Slaughter, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Mark L. LeFevour, Assistant State's Attorney, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

After a jury trial, defendants, Anthony Strong and Lorenzo Strong, were convicted on an accountability theory of murder, two counts of attempted murder, armed robbery and home invasion. Each defendant was sentenced to 30 years for murder, 15 years each for two counts of attempted murder, 20 years for armed robbery and 20 years for home invasion, all sentences to run concurrently.

At trial, following the close of the State's case, defendants made a motion for a directed verdict on the home-invasion charge only, arguing that the State had failed to prove the element that the defendants had entered the residence without authority. The court granted the motion. The following day, the State presented a motion to the court to reconsider its decision, contending that the authority issue should be decided by the jury. The court allowed the motion, rescinded its previous order, and submitted the home-invasion charge to the jury.

On appeal, defendants raise the following issues: (1) whether the court erred both in sustaining and then in reconsidering defendant's motion for a directed verdict on the home-invasion charge; and (2) whether improper remarks made by the prosecutor during the course of the trial and in closing argument were so prejudicial as to deny defendants their due process right to a fair trial.

The testimony given by defendants, Anthony and Lorenzo Strong, at trial was substantially the same. On the afternoon of March 11, 1981, Lorenzo Strong was asked by a friend to assist Gregory Macon in moving his belongings from a residence located at 8343 South Woods in Chicago. The residence was owned by Jesse and Barbara McGee. Macon, the McGee's son-in-law, had been staying there with his wife and four children for approximately three months. During that afternoon, Lorenzo Strong assisted Macon in packing boxes for approximately two hours and then returned to his home.

Later that evening, Lorenzo Strong returned to the McGee residence, along with his brother, Anthony Strong, and Gregory Macon, to again assist Macon in moving. When they arrived at the McGee home, Macon told them to wait in the car while he went in the front door of the home and opened the back entranceway. After a few minutes defendants went to the back entranceway and entered the house. Macon's room was in the back part of the home and they proceeded there. The defendants began relaying boxes containing Macon's belongings to the car in the front of the home. When they finished, Lorenzo Strong entered the house and stated it was time to go. He heard Gregory Macon talking loudly to someone. Lorenzo

and Anthony Strong then left the McGee residence and drove back to Anthony Strong's house, where they remained for the night.

Joseph Kneeland, the son of Jesse and Barbara McGee, testified that on March 11, 1981, he arrived home from high school at about 3:15 p.m. He observed Gregory Macon and Lorenzo Strong packing boxes of Macon's belongings and moving things out of Macon's room. Later that night, Kneeland was awakened in his bedroom by Anthony Strong, who was pointing a gun at him. Anthony Strong directed him to place a cover over his head and to move into the hallway. He heard his mother telling someone to "take the money" and heard his father telling someone that "the money was downstairs in his beige shoes." Anthony Strong told him to remove the cover from his head and his father told him to go into the basement and get the shoes. When he removed the cover from his head, he saw Lorenzo Strong wrestling with his father. He proceeded down the stairs with his father following behind him. Gregory Macon was standing at the top of the stairs, pointing a gun at them. Kneeland heard a shot and saw his father fall. A second shot wounded him in the shoulder. He remained on the floor for 30 to 40 minutes. When he returned upstairs, he looked out the front window and saw that his mother's automobile was missing. He entered his bedroom and saw his mother on the bed with a telephone cord around her neck.

Barbara McGee testified that her pregnant daughter, Virginia, and her son-in-law, Gregory Macon, and their four children had been residing in her home for approximately three months because the heat in their residence had been cut off. Neither her daughter nor Gregory Macon, however, had a key to the home. On March 11, 1981, after she and her husband had retired for the evening, Gregory Macon came to the back door of her house and she let him in. Macon had taken his wife to the hospital earlier in the day and they discussed her condition. McGee returned to bed. A short time later she heard a noise and saw Macon and Anthony Strong enter her bedroom. Anthony Strong was holding a gun. Macon said they were looking for money and he tied her hands behind her back. Anthony Strong began going through her dressers. Macon then carried her to her son Joseph's bedroom and raped her. He tied a telephone cord around her neck and left the room. McGee lost consciousness.

## I

■ We first address defendants' contention that the court erred in reconsidering its order granting defendants' motion for a directed verdict on the count of home invasion. The order was entered on

the grounds that the State had failed to prove a required element of home invasion, that the defendants entered the residence without authority. (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a).) In *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178, this court held that interpretation of the language "without authority" in the home-invasion statute should be consistent with the meaning given the same language in the burglary statute. The *Hudson* court relied on the interpretation for the language "without authority" in the burglary statute found in *People v. Fisher* (1980), 83 Ill. App. 3d 619, 404 N.E.2d 859. In *Fisher*, defendants contended that they were not proved guilty beyond a reasonable doubt of burglary because they had been given permission to enter the victim's apartment. In sustaining the convictions, the court held that the defendants were given limited authority to enter for the purpose of a social visit, and that authority was exceeded when the defendants pulled weapons on the victims, bound and gagged them and took their property. The court found that the criminal actions the defendants engaged in served to vitiate the consent given for their entry so that their entry was unauthorized.

Similarly, in the case at bar, Gregory Macon had been living with the McGees for a three-month period prior to March 11, 1981, and had the McGees' permission to be in their home during the evening hours on that date. We find, however, the authority Macon had that allowed him to remain in the house and to bring the defendants, Anthony and Lorenzo Strong, into the house ended when the defendants began their series of criminal activities which included murder, attempted murder and armed robbery. See *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178.

■ Following its granting of defendant's motion for a directed verdict on home invasion, the court here reviewed authority submitted by counsel on interpretation of the language "without authority" in the home-invasion statute. The following day the court rescinded its order of a directed verdict and reinstated the home-invasion charge. Although as the State argues, and we confirm, the court erred in directing the verdict of acquittal on the home-invasion charge (*People v. Hudson* (1983), 113 Ill. App. 3d 1041; *People v. Fisher* (1980), 83 Ill. App. 3d 619), it is well settled that the legal effect of the directed verdict was to bar, under double-jeopardy principles, the vacation or reversal of that verdict. (U.S. Const., amends. V and XIV; Ill. Const. 1970, art. I, sec. 10; *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115; *People v. Gallas* (1966), 77 Ill. App. 2d 132, 221 N.E.2d 782.) Unquestionably, the allowance

of defendants' motion for directed verdict on the home-invasion charge at the close of the State's case constituted a final adjudication on the merits of that charge. (Ill. Rev. Stat. 1981, ch. 38, par. 115—4(k).) A trial court, therefore, may not withdraw an order directing a verdict and permit the jury to make a finding on the charge. *In re L.R.* (1982), 106 Ill. App. 3d 244, 435 N.E.2d 908; *People v. Hutchinson* (1975), 26 Ill. App. 3d 368, 325 N.E.2d 115.

■ We, therefore, find that defendant's double-jeopardy rights were violated by the court's reinstating the home-invasion charge and submitting it to the jury. Accordingly, the convictions and sentences of each defendant for home invasion are hereby vacated. We further hold that since the remaining convictions of each defendant for murder, attempted murder and armed robbery had substantially different elements of proof for the jury to consider, they remain unaffected by reversal of the home-invasion convictions.

## II

■ Defendants also argue that the State's use of leading questions coupled with prejudicial remarks made by the prosecutor during closing argument deprived them of a fair trial. Specifically, defendants contend that language that the defendants were "casing the house" was elicited by the prosecutor from one witness, was used by the prosecutor in the questioning of a second witness, and was again repeated in the prosecutor's closing argument. Defendants assert that this language was used to convince the jury that the entire crime was preplanned by the defendants. The State maintains that no prejudice arose from use of the "casing the house" language, as defendants' objections to use of the phrase were promptly sustained and the court struck the evidence from the record and instructed the jury to disregard it.

Generally, a conviction will not be reversed on review because of prosecutorial remarks or arguments unless such remarks constitute a material factor in his conviction or result in substantial prejudice to the accused. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011.) For improper comments by the prosecutor to be sufficient to merit reversal, they must be of a substantial magnitude when viewed in light of the entire record and argument. *People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495; *People v. Odum* (1972), 3 Ill. App. 3d 538, 279 N.E.2d 12.

After carefully reviewing the record, we conclude that the use of the phrase "casing the house" by the prosecutor, both in the questioning of witnesses and in closing argument, did not constitute a

material factor in defendants' conviction in light of the competent evidence presented to the jury in this case. The defendants were convicted on an accountability theory, and it was not necessary for the State to prove that the crimes were preplanned. The State only needed to prove that the defendants intended to facilitate the commission of Gregory Macon's criminal acts by aiding and abetting the commission of those crimes. The State provided sufficient evidence to meet this standard of proof. The victims testified that both defendants were in the house during the sequence of crimes, that the defendants were armed and that defendant Anthony Strong demanded money from the victims. We further find that defendants were not substantially prejudiced by the "casing the house" remarks, since objections to use of this language were sustained. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988.) In our judgment the verdict in this case would not have been otherwise had the improper remarks not been made. *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct 226; *People v. Trolia* (1982), 107 Ill. App. 3d 487, 437 N.E.2d 804.

For the aforementioned reasons, it is ordered that the judgment appealed from is vacated for each defendant as regards the offense of home invasion. The judgment is affirmed as regards defendants' convictions for murder, attempted murder and armed robbery.

Affirmed in part; vacated in part.

BUCKLEY, P.J., and GOLDBERG, J., concur.*

---

*This opinion was adopted by the court prior to the retirement of Justice Goldberg. We also note that a companion case to this case, No. 82—3089, People v. Carl Sanders, is filed this same date.